IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

     v.                                           Criminal No. 3:02-cr-257 (DJN)

BERNARD LEE DODSON, SR.,
     Defendant.

**MEMORANDUM OPINION**

On December 17, 2002, a jury convicted Defendant Bernard Lee Dodson, Sr., ("Defendant") of conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 846, and possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). On March 19, 2003, United States District Judge James R. Spencer sentenced Defendant to 360 months' imprisonment on both counts, with the sentences to run concurrently. Defendant has served approximately 18 years of that sentence, and has a projected release date of July 30, 2028.

This matter now comes before the Court on Defendant's Motion for Compassionate Release (ECF No. 70), which moves pursuant to 18 U.S.C. § 3582(c)(1) for Defendant's release in light of his medical conditions and the outbreak of Coronavirus Disease 2019 ("COVID-19").[1] For the reasons set forth below, the Court DENIES Defendant's Motion (ECF No. 70).

---

[1] On July 6, 2020, Defendant, proceeding *pro se*, filed his initial Motion for Compassionate Release (ECF No. 68). The Court then appointed counsel for Defendant, who filed a renewed Motion for Compassionate Release (ECF No. 70) on Defendant's behalf. Because Defendant's counsel has reviewed Defendant's initial arguments and incorporated them into Defendant's renewed Motion (ECF No. 70), for the same reasons that the Court denies Defendant's renewed Motion, the Court also DENIES Defendant's initial Motion (ECF No. 68).

## I. BACKGROUND

### A. Defendant's Underlying Offense

Defendant's involvement in drug trafficking spanned from February 2000 to July 23, 2002. (March 11, 2003, Presentence Investigation Report ("PSR") (ECF No. 66) ¶ 10.) During that time, Defendant would combine finances with another individual and purchase heroin from a local supplier for redistribution. (PSR ¶¶ 7-10.) All told, Defendant distributed and/or purchased more than 100 grams, but less than 400 grams, of heroin. (PSR ¶¶ 7-10.)

### B. Procedural History

On July 18, 2002, the Court issued an arrest warrant for Defendant, and he made his initial appearance on July 23, 2002. (Dkt. Nos. 1, 2.) On October 1, 2002, a grand jury returned a two-count superseding indictment against Defendant, charging him in Count 1 with conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 846, and in Count 2 with possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (Dkt. No. 12; PSR ¶ 2.) Thereafter, on October 8, 2002, Defendant pled not guilty to both counts of the superseding indictment and requested a trial by jury. (Dkt. No. 13.) On December 16, 2002, a jury trial commenced and, on December 17, 2002, the jury returned guilty verdicts on Counts 1 and 2 of the superseding indictment. (Dkt. No. 27; PSR ¶¶ 2-3.) On March 19, 2003, the Court sentenced Defendant to 360 months' imprisonment on each count, with the sentences to run concurrently.

### C. Defendant's Motion for Compassionate Release

Earlier this year, the first cases of COVID-19 emerged in the United States, including within the federal prison system. *See* Fed. Bureau of Prisons, COVID-19 Coronavirus, www.bop.gov/coronavirus (showing updated figures on the number of inmates and prison staff

2

who have tested positive for COVID-19). In response, on August 10, 2020, Defendant moved for compassionate release pursuant to § 3582(c)(1)(A). (Def.'s Mot. to Reduce Sentence Under 18 U.S.C. § 3582(c)(1) (Compassionate Release) ("Def.'s Mot.") (ECF No. 70) at 1.)

In support of his Motion, Defendant argues for early release, because his medical conditions render him particularly susceptible to COVID-19. (Def.'s Mot. at 1.) Specifically, Defendant avers that he suffers from Type II Diabetes, chronic heart problems, high blood pressure and an ongoing kidney problem, which he maintains increases the likelihood of COVID-19 complications should he contract the disease. (Def.'s Mot. at 1-2.) Defendant also contends that his age of 58 years places him at a higher risk than younger individuals. (Def.'s Mot. at 2.) Defendant further argues that he has a particularized risk of contracting COVID-19, because the Bureau of Prisons ("BOP") facility that houses Defendant has reported incidences of the disease. (Def.'s Mot. at 15-20.) Specifically, Defendant claims that 226 inmates at FMC Lexington have tested positive for COVID-19 out of 966 inmates tested. (Def.'s Mot. at 3.)

As for whether his release comports with the relevant § 3553(a) factors and policy statements, Defendant argues that if sentenced today, his guideline range would stand at 110 to 137 months. (Def.'s Mot. at 6.) Specifically, Defendant maintains that when the Court sentenced him in 2003, the Court had to follow a mandatory guideline range. (Def.'s Mot. at 7.) Because the Court today would follow the guidelines as they presently exist, Defendant claims that the Court should reduce Defendant's sentence in light of the 110-to-137-month range. (Def.'s Mot. at 7.) Given that he has already served 18 years (i.e., 216 months), Defendant contends that reducing his sentence to time served would prove sufficient but not greater than necessary to effectuate the relevant sentencing objectives. (Def.'s Mot. at 6.) Additionally, Defendant notes that he has maintained mostly clear conduct during his incarceration, thus

3

demonstrating that he presents a low risk of recidivism and would not endanger the public. (Def.'s Mot. at 9-10.) Defendant avers that he has taken advantage of prison programming and proves well-situated for life outside prison. (Def.'s Mot. at 9.).

Finally, Defendant argues that he has a viable release plan and enjoys the support of his wife and mother. (Def.'s Mot. at 9-10.) Defendant plans to stay with his mother in the event of his early release.

The Government filed its Response Opposing Defendant's Motion for Compassionate Release on August 24, 2020, (Gov't's Resp. in Opp. to Def.'s Mot. for Compassionate Release ("Gov't Resp.") (ECF No. 72)), rendering the matter now ripe for review.

## II. STANDARD OF REVIEW

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify a criminal defendant's sentence for "extraordinary and compelling reasons" "upon motion of the Director of the Bureau of Prisons" or "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i). By its plain language, § 3582(c)(1)(A) requires defendants to first exhaust administrative remedies or wait thirty days after requesting that the warden of their facility file a motion for a sentence reduction; however, courts have waived this requirement when enforcing it would prove futile. *See, e.g., Washington v. BOP*, 2019 WL 6255786, at *2 (N.D. Ohio July 3, 2019) (explaining in addressing motion for recalculation of good time credit under First Step Act that "[t]he failure to exhaust administrative remedies may be excused if seeking administrative remedies would be futile").

4

Once the administrative remedies under § 3582(c)(1)(A) have been exhausted or waived, the Court may reduce or modify a sentence when "extraordinary and compelling reasons warrant such a reduction." In determining what constitutes "extraordinary and compelling reasons," courts have considered related policy statements under the United States Sentencing Guidelines, though such statements are not binding. *See, e.g., United States v. Beck*, 425 F. Supp. 3d 573, 582 (M.D.N.C. 2019) (considering what the Sentencing Guidelines defined as "extraordinary and compelling reasons"). These policy statements provide that a defendant's medical conditions, age, family circumstances or other circumstances, either singly or in combination, can prove sufficiently extraordinary and compelling to justify compassionate release. USSG § 1B1.13, application notes 1(A)-(D).

However, to be extraordinary and compelling, a defendant's medical conditions must be either "terminal . . . with an end of life trajectory" or must "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." § 1B1.13, application note 1(A). Similarly, a defendant may be released based on his advanced age when he "is at least 65 years old," "is experiencing a serious deterioration in physical or mental health because of the aging process" and "has served at least 10 years or 75 percent of his or her term of imprisonment." § 1B1.13, application note 1(B). Defendants may also seek compassionate release based on family circumstances, including when the caregiver of a defendant's minor child has died or become incapacitated, or when the defendant's spouse or partner has become incapacitated and the defendant constitutes the only available caregiver. § 1B1.13, application note 1(C). Finally, the Sentencing Guidelines contemplate situations in which "there exists in the defendant's case an extraordinary and compelling reason [for compassionate release] other than, or in combination

5

with, [the defendant's medical conditions, age and family circumstances]." § 1B1.13, application note 1(D).

Relevant here, "[i]n the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling (Feiling I)*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (citing *United States v. Dungee*, 2020 WL 1666470, at *2 (W.D. Va. Apr. 4, 2020); *United States v. Edwards*, __ F. Supp. 3d __, 2020 WL 1650406, at *5 (W.D. Va. Apr. 2, 2020)). "To establish a particularized risk of contracting COVID-19, an inmate must first demonstrate that cases of COVID-19 have emerged at his facility." *United States v. Feiling (Feiling II)*, 2020 WL 5047064, at *7 (E.D. Va. Aug. 26, 2020). However, even then, "COVID-19 and an inmate's susceptibility to it do not justify compassionate release when . . . the inmate refuses additional protections afforded to him by the BOP without good cause and continues to voluntarily place himself in an environment in which he faces the highest risk of contracting the disease." *Id.*

Even if extraordinary and compelling reasons exist for a defendant's compassionate release, § 3582(c)(1)(A) requires courts to consider "the factors set forth in section 3553(a) to the extent they are applicable" and "applicable policy statements issued by the [United States] Sentencing Commission" before granting a sentence modification. To that end, § 3553(a) requires courts to consider, among other factors, the nature and circumstances of the underlying offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from further crimes of the defendant. 18 U.S.C. § 3353(a)(1)-(2). Additionally, the Sentencing Commission has advised

6

courts to consider whether, based on the factors set forth in 18 U.S.C. § 3142(g), a defendant would present a danger to the safety of any other person or the community if released.[2] USSG § 1B1.13(2). And the Sentencing Commission has emphasized that a defendant's rehabilitation while incarcerated, alone, proves insufficient to warrant a sentence reduction. § 1B1.13, application note 3.

Ultimately, the Court may grant compassionate release only after a defendant establishes an extraordinary and compelling reason for his release and the Court finds that the defendant's release would not undermine the relevant § 3553(a) factors or any relevant policy statements issued by the Sentencing Commission.

### III. ANALYSIS

In response to Defendant's Motion, the Government argues that the Court need not reach the question of whether Defendant demonstrates an extraordinary and compelling reason for compassionate release. (Gov't Resp. at 8.) Instead, the Government submits that Defendant's medical conditions "*may* establish an 'extraordinary and compelling reason' supporting compassionate release," but nonetheless argues that '[t]he danger he presents to the community as a violent recidivist, along with other analysis under the § 3553(a) sentencing factors, militate dispositively against a sentence reduction." (Gov't Resp. at 8-10) (emphasis in original). Given

---

[2] As modified in the context of a compassionate release motion, before releasing a defendant, courts should consider: (1) the nature and circumstances of the offense of conviction, including whether the offense is a crime of violence, a violation of § 1591, a terrorism offense, or an offense involving a minor victim, controlled substance, firearm, explosive or destructive device; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including his or her character, physical or mental condition, family and community ties, financial resources, history of substance abuse and criminal history, as well as whether at the time of the instant offense, the defendant was on a period of probation, parole or other form of release; and, (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g)(1)-(4).

as much, the Court will assume — without deciding — that Defendant has presented an extraordinary and compelling reason in support of compassionate release. Accordingly, the Court must only consider whether Defendant's release would comport with the relevant § 3553(a) factors and the guidance provided by the Sentencing Commission.[3]

To that end, as mentioned, Defendant argues that the § 3553(a) factors support his release, primarily because if Defendant were sentenced today, his guidelines would stand at 110 to 137 months. (Def.'s Mot. at 6-8.) And, because Defendant has served over 216 months to date, he argues that his early release would prove sufficient but not greater than necessary to effectuate the relevant sentencing objectives. (Def.'s Mot. at 6-8.) Moreover, Defendant points to his clean disciplinary record in prison and the support that he enjoys from his wife and mother as evidence that he will not reoffend and that he stands well-situated for life outside prison. (Def.'s Mot. at 9-10.)

In response, the Government avers that Defendant's argument is procedurally improper. (Gov't Resp. at 8, n. 7.) Specifically, the Government points out that Defendant essentially presents an argument under Section 404(b) of the First Step Act or even 28 U.S.C. § 2241. (Gov't Resp. at 8, n. 7.) As such, the Government contends that a compassionate release motion does not provide the appropriate vehicle to bring such an argument. (Gov't Resp. at 8, n. 7.) In any event, the Government argues that the § 3553(a) factors do not favor compassionate release. (Gov't Resp. at 12-14.) Here, the Government highlights Defendant's serious criminal

---

[3] Whether Defendant has exhausted his administrative remedies remains unclear from the record. According to Defendant, he requested compassionate release on June 27, 2020. (Def.'s Mot. at 5.) Yet the Government points out that Defendant has not asserted that he sought relief in connection with COVID-19, nor has he supplied his request for relief to the Government. (Gov't Resp. at 3.) Nonetheless, given that the Government "declines to assert at this time that [Defendant] failed to exhaust his administrative remedies," the Court will proceed to address Defendant's Motion on the merits. (Gov't Resp. at 3.)

convictions, which include convictions for felonious assault, breaking and entering, property damage, theft, distribution of cocaine, and conspiracy to distribute to heroin. (Gov't Resp. at 12-14.) The Court agrees with the Government.

The relevant § 3553(a) factors do not support Defendant's compassionate release. To begin, Defendant has not properly presented his argument regarding changes to the guideline range. The case law on which Defendant relies analyzes Section 404(b) of the First Step Act, and not the relevant compassionate release provisions of 18 U.S.C. § 3582. (Def.'s Mot. at 7) (citing *United States v. Chambers*, 956 F.3d 667 (4th Cir. 2020)). Indeed, § 404(b) specifically provides a mechanism through which a defendant may seek resentencing in light of the Fair Sentencing Act's modified guideline provisions. First Step Act, Pub. L. No. 115-391, 132 Stat. 5194. Section 3582(c)(1), on the other hand, contemplates compassionate release based on changes in a prisoner's health or family circumstances that rise to an extraordinary and compelling dimension. *See* U.S.S.G. § 1B1.13, cmt. n.1. (specifying four categories of extraordinary and compelling reasons, which in turn center on the age, health, and family circumstances of a defendant). In truth, Defendant seeks a resentencing based on changes to the guideline provisions. (Def.'s Mot. at 8, n. 7) (acknowledging that Defendant might pursue relief under § 2241 and "simply not[ing] it here" to prevent waiver.) Thus, although the Court will consider the guideline reduction in the overall § 3553(a) analysis, this compassionate release motion does not provide the Court with the appropriate vehicle to entertain such relief on an independent basis.

Nonetheless, Defendant's criminal history weighs against his release. Before his incarceration for the instant offense, Defendant garnered an extensive criminal history that includes violent felony convictions. For example, at the age of 18, Defendant was convicted of

breaking and entering and felonious assault. (PSR ¶ 21.) The underlying facts indicate that Defendant broke into his girlfriend's apartment and violently assaulted her. (PSR ¶ 21.) That assault left his girlfriend with a bruised right eardrum and permanent high tone hearing loss. (PSR ¶ 21.) Additionally, at the age of 25, Defendant was convicted of property damage for throwing a missile into an occupied moving vehicle. (PSR ¶ 23.) Defendant's actions caused the side window, antenna, and windshield wipers to break. (PSR ¶ 23.) And finally, Defendant was convicted of drug offenses on two occasions before the instant offense of incarceration. (PSR ¶¶ 24, 25.) Specifically, Defendant was convicted of distribution of cocaine at the age of 26, and conspiracy to distribute heroin at the age of 34. (PSR ¶¶ 24, 25.)

Ultimately, even if extraordinary and compelling reasons did exist for Defendant's compassionate release, the Court, in its discretion and after considering the relevant § 3553(a) factors and policy statements, finds that releasing Defendant at this time would not adequately protect the public, promote respect for the law, deter Defendant and others from engaging in similar conduct or reflect the seriousness of Defendant's offense. To the extent that the modification of Defendant's guideline could warrant a sentence reduction, a compassionate release motion does not provide the Court with the appropriate means — including the adequate statutory and caselaw analysis — to properly assess the merits of the relief requested. Accordingly, the Court DENIES Defendant's Motion for Compassionate Release.

## IV. CONCLUSION

For the reasons set forth above, the Court DENIES Defendant's Motion for Compassionate Release (ECF No. 70). An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

                                                        /s/
                                            David J. Novak
                                            United States District Judge

Richmond, Virginia
Dated: October 28, 2020